IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JUDGE PAULEY

GEORGE LYNCH

**12 CIV 4439**

INDEX NO.

PLAINTIFF,

ECF CASE

-versus-

THE CITY OF NEW YORK, a municipal entity,
NEW YORK CITY POLICE OFFICERS
"JOHN DOES 1-9," NEW YORK CITY POLICE
OFFICER "JANE DOE,"

COMPLAINT
[JURY TRIAL
DEMANDED]

JUN 6 2012
U.S.D.C. S.D.N.Y.
CASHIERS

DEFENDANTS.

1. Plaintiff GEORGE LYNCH, by his attorneys, STECKLOW, COHEN AND THOMPSON, complaining of the defendants, respectfully allege as follows:

## PRELMINARY STATEMENT

2. Plaintiff GEORGE LYNCH brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

3. On Saturday, July 16, 2011 at or around 11:00 P.M., Plaintiff GEORGE LYNCH, now in his senior year of high school, was walking to the home that he shared with his mother in the Bronx, following a date with a young lady. On his walk home, Plaintiff GEORGE LYNCH saw a few acquaintances, young men that he regularly played basketball with in parks, and stopped to chat with them. Shortly after Plaintiff GEORGE LYNCH stopped to chat, a marked police car pulled up nearby and a Defendant "John Doe" POLICE OFFICER began making inquires, from inside the vehicle, to the group of young men, who were exhibiting no suspicious behavior.

4. Plaintiff GEORGE LYNCH had no prior interaction with law enforcement, and was under the mistaken belief that he could be arrested because he did not have identification with him. Despite the fact that Plaintiff GEORGE LYNCH was not engaged in any unlawful activity, was not in possession of any contraband or weapons, and did not have any outstanding warrants, he ran away as the Defendant "John Doe" POLICE OFFICERS exited their police vehicle.

5.  Plaintiff GEORGE LYNCH was frightened by the Defendant "John Doe" POLICE OFFICERS' threatening demeanor, and was aware of numerous prior instances of police brutality in his neighborhood.

6.  The two Defendant "John Doe" POLICE OFFICERS, with several others joining, chased Plaintiff GEORGE LYNCH. Eventually, Plaintiff GEORGE LYNCH stopped running, completely exhausted. Seconds later, Plaintiff GEORGE LYNCH was tacked from behind and brought down hard onto concrete by one or more of Defendant "John Doe" POLICE OFFICERS. Defendant "John Doe" POLICE OFFICERS restrained Plaintiff GEORGE LYNCH immediately, with Plaintiff GEORGE LYNCH putting up no resistance. Upon his restraint, one or more of the Defendant "John Doe" POLICE OFFICERS brutally beat Plaintiff GEORGE LYNCH by punching and kicking him in the face and shoulders, breaking his nose and clavicle.

7.  Plaintiff GEORGE LYNCH was taken to the Fourty-Fourth (44th) Precinct where Defendant "John Doe" POLICE OFFICERS taunted him, attempted to convince him that they were fabricating evidence to support his arrest, threatened him with assault by other inmates, failed to provide him with medical treatment, and held him for hours before simply letting him go with a veiled threat that he should not report the assault. Plaintiff GEORGE LYNCH was not charged with any crime or violation.

8.  Due to the brutal beating and injuries Plaintiff GEORGE LYNCH sustained, he was unable to play tournament basketball throughout the late summer and fall, eliminating previously favorable prospects for college basketball scouting and concomitant scholarship opportunities. Plaintiff GEORGE LYNCH brings this action in a quest for answers as to why he was punitively arrested without probable cause, brutally beaten, and detained without any charges being brought against him.

## JURISDICTION

9.  This action is brought pursuant to 42 U.S.C.§§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

10. Plaintiff GEORGE LYNCH further invokes this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## VENUE

11. Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because Defendant CITY OF NEW YORK maintains its primary and relevant place(s) of business in this district.

## JURY DEMAND

12. Plaintiff GEORGE LYNCH respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## THE PARTIES

13. At all times pertinent to this complaint, Plaintiff GEORGE LYNCH is and was a resident of the City of New York, State of New York, and the County of Bronx.

14. Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

15. Defendant THE CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

16. That at all times hereinafter mentioned, the Defendant Police Officers "JOHN DOES 1-9"_(collectively "Defendant POLICE OFFICERS" or individually "Defendant POLICE OFFICER") were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

17. The identities of the Defendant "John Does POLICE OFFICERS at issue here are unknown to Plaintiff GEORGE LYNCH at this time.

18. Plaintiff GEORGE LYNCH will amend this complaint to name the Defendant POLICE OFFICERS as their identities become available to Plaintiff GEORGE LYNCH.

19. That at all times hereinafter mentioned the Defendant "John Doe" POLICE OFFICERS were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

20. Each and all of the acts of the Defendant "John Doe" POLICE OFFICERS alleged herein were done by said defendants while acting within the scope of their employment by defendant THE CITY OF NEW YORK.

21. Each and all of the acts of the Defendant "John Doe" POLICE OFFICERS alleged herein were done by said defendants while acting in furtherance of their employment by defendant THE CITY OF NEW YORK.

## FACTS COMMON TO ALL CLAIMS

22. Plaintiff GEORGE LYNCH is a nineteen (19) year-old male.

23. Plaintiff GEORGE LYNCH is single.

24. Plaintiff GEORGE LYNCH is a high school senior.

25. Plaintiff GEORGE LYNCH has no criminal record of any kind.

26. Plaintiff GEORGE LYNCH was raised by strict mother who had admonished him on many occasions that, in sum and substance, if he were ever arrested he would be cut off from any assistance from her.

27. Plaintiff GEORGE LYNCH was and remains a talented basketball player.

28. On information and belief, it is a common practice of college and professional basketball scouts seeking talented players in New York City to scout such players at basketball tournaments that take place in parks around New York City throughout the summer months.

29. On information and belief, legendary basketball players such as Kareem Abdul-Jabbar, Wilt Chamberlain and Julius "Dr. J" Irving started their respective paths to stardom in tournaments held at New York City park basketball courts.

30. On information and belief, now-common basketball plays such as "slam dunks" and "crossover dribbles" were originated in New York City park basketball courts, and first used competitively in New York City park tournament play.

31. Plaintiff GEORGE LYNCH participated in both informal and tournament basketball in parks around the Bronx throughout the early summer of 2011.

32. In doing so, Plaintiff GEORGE LYNCH hoped to draw attention from college scouts, with the goal of attending college on a basketball scholarship.

33. The events herein described began at or around 11:00 PM on July 16, 2011 in the Bronx, New York, the summer before Plaintiff GEORGE LYNCH would begin his senior year of high school.

34. On the evening of July 16, 2011, Plaintiff GEORGE LYNCH was on Clay Avenue around 170th Street in the Bronx, New York.

35. At that time, Plaintiff GEORGE LYNCH was returning home after a date with a young lady.

36. Plaintiff GEORGE LYNCH had not escorted the young lady from door-to-door, but instead walked with her to a point near her home before wishing her a good night and beginning to walk back to his own home.

37. As Plaintiff GEORGE LYNCH walked along Clay Avenue near 170th Street, he observed a few young men that he was acquainted with from basketball games in a nearby park.

38. Plaintiff GEORGE LYNCH approached these young men and began conversing with them in a friendly, open manner.

39. As Plaintiff GEORGE LYNCH was conversing with his acquaintances in the Bronx, New York on July 16, 2011 at or around 11:00PM, a marked police vehicle pulled up next to them.

40. Plaintiff GEORGE LYNCH, and his acquaintances, were not exhibiting any suspicious behavior or engaging in any illegal acts.

41. However, Plaintiff GEORGE LYNCH is black.

42. On information and belief, the acquaintances whom Plaintiff GEORGE LYNCH stopped to converse with were all young men from racial minority backgrounds.

43. On information and belief, the preponderance of young men of minority backgrounds in the Bronx strongly believe that factual innocence is no protection from arrest or brutality at the hands of New York City Police Officers for young men of minority backgrounds.

44. As this case and other cases cited below demonstrate, this supposition is not without merit.

45. Defendant "John Doe" POLICE OFFICER in the marked police vehicle inquired as to whether Plaintiff GEORGE LYNCH, or any of the young men, lived in the building they were standing in front of at the time.

46. In response to the Defendant "John Doe" POLICE OFFICER's inquiry, one of the young men indicated that his friend lived in the building.

47. Upon hearing the young man's response, one of the Defendant "John Doe" POLICE OFFICERS stated in sum and substance, "oh, you guys aren't serious."

48. At that time one of the Defendant "John Doe" POLICE OFFICERS exited the vehicle in an aggressive and angry manner.

49. At that time one of the Defendant "John Doe" POLICE OFFICERS exited the vehicle in what Plaintiff GEORGE LYNCH understood to be an aggressive and angry manner.

50. Plaintiff GEORGE LYNCH was alarmed at Defendant "John Doe" POLICE OFFICER'S conduct and demeanor.

51. Plaintiff GEORGE LYNCH was alarmed at Defendant "John Doe" POLICE OFFICER'S conduct and demeanor because Plaintiff GEORGE LYNCH had no prior confrontations with law enforcement.

52. Plaintiff GEORGE LYNCH was alarmed at Defendant "John Doe" POLICE OFFICER'S manner because Plaintiff GEORGE LYNCH was aware of prior instances in which police in his neighborhood had wrongfully arrested and brutalized young black men.

53. Plaintiff GEORGE LYNCH was alarmed at Defendant "John Doe" POLICE OFFICER'S manner because Plaintiff GEORGE LYNCH did not have identification on his person at the time.

54. Plaintiff GEORGE LYNCH'S unease from not having identification stemmed from his mistaken good faith belief that it was against the law to not carry identification.

55. Plaintiff GEORGE LYNCH's misunderstanding of the law was at least partially due to his lack of prior encounters with law enforcement.

56. Plaintiff GEORGE LYNCH had also been informed by acquaintances that said acquaintances had been arrested for not having identification with them.

57. Plaintiff GEORGE LYNCH began running down the street.

58. Shortly thereafter, the house slippers that Plaintiff GEORGE LYNCH was wearing came off, and Plaintiff GEORGE LYNCH continued running with bare feet.

59. Plaintiff GEORGE LYNCH was chased by two Defendant "John Doe" POLICE OFFICERS who were joined by several other Defendant "John Doe" POLICE OFFICERS.

60. Plaintiff GEORGE LYNCH ran for some time, eventually stopping to catch his breath.

61. Upon seeing another police car, Plaintiff GEORGE LYNCH began running again.

62. At a certain point Plaintiff GEORGE LYNCH stopped, exhausted, and bent forward while catching his breath.

63. Almost immediately upon stopping, Plaintiff GEORGE LYNCH was tackled from behind onto concrete by one or more Defendant "John Doe" POLICE OFFICERS.

64. Plaintiff GEORGE LYNCH suffered pain and injuries as a result of being tackled by one or more of the Defendant "John Doe" POLICE OFFICERS.

65. Plaintiff GEORGE LYNCH was tackled in a manner that caused one of his arms to be caught beneath his body.

66. Plaintiff GEORGE LYNCH did not attempt to get up or otherwise resist the one or more Defendant "John Doe" Police Officers who had tackled him.

67. Plaintiff GEORGE LYNCH's free arm was immediately restrained by one or more of the Defendant "John Doe" Police Officers.

68. Plaintiff GEORGE LYNCH did not resist police efforts to restrain his arms.

69. Plaintiff GEORGE LYNCH was placed in handcuffs by one or more of the Defendant "JOHN DOE" Police Officers.

70. Plaintiff GEORGE LYNCH did not resist police efforts to place him in handcuffs.

71. Immediately after Plaintiff GEORGE LYNCH was placed in handcuffs by one or more of the Defendant "John Doe" POLICE OFFICERS, one Defendant "John Doe" POLICE OFFICER stated in sum and substance, "you made me run."

72. While Plaintiff GEORGE LYNCH was on the ground, in handcuffs, that same Defendant "John Doe" POLICE OFFICER began to beat Plaintiff GEORGE LYNCH.

73. The Defendant "JOHN DOE" Police Officer punched and kicked Plaintiff GEORGE LYNCH in his face and shoulders.

74. Plaintiff GEORGE LYNCH was punched and kicked in the face and shoulders.

75. Plaintiff GEORGE LYNCH was punched and kicked in the face and shoulders while being restrained by several Defendant "John Doe" POLICE OFFICERS.

76. In the course of brutally beating Plaintiff GEORGE LYNCH, or directly before or thereafter, the Defendant "John Doe" POLICE OFFICERS placed Plaintiff GEORGE LYNCH under arrest.

77. During and after this beating, Plaintiff GEORGE LYNCH did not struggle or resist as he was being handcuffed and brutally beaten.

78. At some point, another Defendant "John Doe' POLICE OFFICER stated in sum and substance, "all right, that's it, we've got him in cuffs now," at which point the brutal beating administered by Defendant "John Doe" POLICE OFFICERS ceased.

79. On information and belief, the Defendant "JOHN DOE" Police Officer who made this statement knew or should have known that excessive force was being employed against Plaintiff GEORGE LYNCH by one or more of the Defendant "JOHN DOE" Police Officers.

80. On information and belief, the Defendant "JOHN DOE" Police Officer who made this statement did not intervene to prevent excessive force from being employed against Plaintiff GEORGE LYNCH by one or more of the Defendant "JOHN DOE" Police Officers, despite having had a realistic opportunity to do so.

## INJURIES

81. Plaintiff GEORGE LYNCH received multiple serious and permanent injuries from the July 16, 2011 Bronx, New York incident and brutal beating administered by the Defendant "John Doe" POLICE OFFICERS upon Plaintiff GEORGE LYNCH.

82. Plaintiff GEORGE LYNCH received multiple serious injuries from the July 16, 2011 Bronx, New York incident and brutal beating administered by the Defendant "John Doe" POLICE OFFICERS upon Plaintiff GEORGE LYNCH.

83. Plaintiff GEORGE LYNCH sustained a clavicle fracture as a result of the July 16, 2011 Bronx, New York incident and brutal beating by Defendant "John Doe" POLICE OFFICERS upon Plaintiff GEORGE LYNCH.

84. Plaintiff GEORGE LYNCH sustained a broken nose as a result of the July 16, 2011 Bronx, New York incident and brutal beating by Defendant "John Doe" POLICE OFFICERS upon Plaintiff GEORGE LYNCH.

85. Plaintiff GEORGE LYNCH sustained multiple cuts and bruises as a result of the July 16, 2011 Bronx, New York incident and brutal beating by Defendant "John Doe" POLICE OFFICERS upon Plaintiff GEORGE LYNCH.

86. Plaintiff GEORGE LYNCH has several scars that are still visible to date as a result of the July 16, 2011 Bronx, New York incident and brutal beating by Defendant "John Doe" POLICE OFFICERS upon Plaintiff GEORGE LYNCH.

87. Plaintiff GEORGE LYNCH suffered terror, humiliation and mental anguish as a result of the July 16, 2011 Bronx, New York incident and brutal beating administered by the Defendants "John Doe" POLICE OFFICERS upon Plaintiff GEORGE LYNCH.

88. Plaintiff GEORGE LYNCH'S aforementioned injuries sustained as a result of the July 16, 2011 Bronx, New York incident and brutal beating administered by the Defendants "John Doe" POLICE OFFICERS upon Plaintiff GEORGE LYNCH caused him to be unable to play basketball in the late summer and fall of 2011.

89. The proximate result of Plaintiff GEORGE LYNCH'S being unable to play basketball in the late summer and early fall was that Plaintiff GEORGE LYNCH's chances at a basketball scholarship were severely curtailed.

90. Due to the injuries sustained Plaintiff GEORGE LYNCH was unable to play basketball in the late summer and early fall, losing some of his best chances for an athletic scholarship.

## POST-ARREST

91. Following this arrest by Defendant "John Doe" POLICE OFFICERS, Plaintiff GEORGE LYNCH was searched by one or more of the Defendant "John Doe" POLICE OFFICERS.

92. The search of Plaintiff GEORGE LYNCH by one or more of the Defendant "John Doe" POLICE OFFICERS found no narcotics, weapons, or contraband of any kind.

93. Following the search of Plaintiff GEORGE LYNCH by one or more of the Defendant "John Doe" POLICE OFFICERS that found no narcotics, weapons, or contraband of any kind, Plaintiff GEORGE LYNCH was transported to the fourty-fourth (44th) Precinct in a police van.

94. During transportation to the fourty-fourth (44th) Precinct by several of the Defendant "John Doe" POLICE OFFICERS, one of them stated, in sum and substance, that Plaintiff GEORGE LYNCH was "going to jail."

95. During transportation to the fourty-fourth (44th) Precinct by several of the Defendant "John Doe" POLICE OFFICERS, one of them stated, in sum and substance, that Plaintiff GEORGE LYNCH was "going to jail," where "someone will put their fingers in your [Plaintiff GEORGE LYNCH's] butt."

96. The statements that Plaintiff GEORGE LYNCH was "going to jail," and, that, once there, someone "someone will put their fingers in your [Plaintiff GEORGE LYNCH's] butt" by Defendant "John Doe" POLICE OFFICERS caused Plaintiff GEORGE LYNCH extreme terror and anguish.

97. Plaintiff GEORGE LYNCH suffered terror, humiliation and mental anguish as a result of intimidating and threatening statements and harsh treatment administered by the Defendants "John Doe" POLICE OFFICERS upon Plaintiff GEORGE LYNCH on July 16, 2011 Bronx, New York.

98. Upon arrival at the fourty-fourth (44th) Precinct, Defendant "John Doe" POLICE OFFICER engaged in a pantomime directed at Plaintiff GEORGE LYNCH.

99. Upon arrival at the 44th Precinct, a Defendant "John Doe" POLICE OFFICER engaged in a pantomime directed at Plaintiff GEORGE LYNCH, wherein said Defendant "JOHN DOE" Police Officer wiped Plaintiff GEORGE LYNCH'S fingers with a tissue and then proceeded to wipe the tissue along the handle of a gun; all within view of Plaintiff GEORGE LYNCH.

100.      On information and belief, the actions of Defendant "John Doe' POLICE OFFICER were intended to convince Plaintiff GEORGE LYNCH that Defendant "John Doe" POLICE OFFICER was planting Plaintiff GEORGE LYNCH'S fingerprints on the gun.

101.      Seeing Defendant "John Doe" POLICE OFFICER pantomiming caused to Plaintiff GEORGE LYNCH extreme anguish, fear, and mental suffering.

102.      Due to the brutal beating administered by Defendants "John Doe" POLICE OFFICERS Plaintiff GEORGE LYNCH was bleeding.

103.      Due to the brutal beating administered by Defendants "John Doe" POLICE OFFICERS Plaintiff GEORGE LYNCH was suffering from extreme pain.

104.    Because of the extreme pain Plaintiff GEORGE LYNCH requested medical treatment from Defendants "John Doe" POLICE OFFICERS.

105.    Upon Plaintiff GEORGE LYNCH'S request for medical care Defendants "John Doe" POLICE OFFICERS stated in sum and substance that Plaintiff GEORGE LYNCH would remain in custody a lot longer if Plaintiff GEORGE LYNCH were to insist on seeing a doctor.

106.    Upon Defendants "John Doe" POLICE OFFICERS statement that Plaintiff GEORGE LYNCH would be required to remain in custody longer Plaintiff GEORGE LYNCH withdrew the request for medical attention and care.

107.    At one point on the night of July 16, 2011 Plaintiff GEORGE LYNCH informed an officer in sum and substance that Plaintiff GEORGE LYNCH felt faint.

108.    Upon hearing that Plaintiff GEORGE LYNCH felt faint Defendant "John Doe" POLICE OFFICER stated in sum and substance that he "would smack the shit out of him if he passed out."

109.    Defendants "John Doe" POLICE OFFICERS statement which caused Plaintiff GEORGE LYNCH to withdraw the request for medical care resulted in Plaintiff GEORGE LYNCH extreme mental anguish and fear.

110.    Defendants "John Doe" POLICE OFFICERS statement which caused Plaintiff GEORGE LYNCH to withdraw the request for medical care caused Plaintiff GEORGE LYNCH extreme physical pain and suffering.

111.    At some point in the night of July 16, 2011, a New York City Police officer brought Plaintiff GEORGE LYNCH a glass of water, and proceeded poured some water over Plaintiff GEORGE LYNCH.

112.    As a result of the failure to treat Plaintiff GEORGE LYNCH'S medical condition and continued police taunting, Plaintiff GEORGE LYNCH suffered considerable pain, anguish and suffering while in police custody.

113.    Plaintiff GEORGE LYNCH was held at the fourty-fourth (44th) Precinct overnight on July 16, 2011.

114.    Plaintiff GEORGE LYNCH was fingerprinted.

115.    Defendant "Jane Doe" POLICE OFFICER took a photograph of Plaintiff GEORGE LYNCH with a cell phone.

116.    No 'official' mug shot was taken of Plaintiff GEORGE LYNCH.

117.    After some time Defendant "Jane Doe" POLICE OFFICER, who photographed Plaintiff GEORGE LYNCH, came to the cell where Plaintiff GEORGE LYNCH was being held and instructed Plaintiff GEORGE LYNCH to follow behind with his hands behind his back as though he were handcuffed.

118.     Plaintiff GEORGE LYNCH complied with the Defendant "Jane Doe" POLICE OFFICER'S order and followed her out of the police precinct.

119.     Upon exiting the fourty-fourth (44th) Precinct Defendant "Jane Doe" POLICE OFFICER stated in sum and substance to Plaintiff GEORGE LYNCH, that no charges were being filed. And, if he didn't tell his mother about what had happened, she would never need to know.

120.     Upon leaving the fourty-fourth (44th) Precinct Plaintiff GEORGE LYNCH returned home, and then proceeded to Bronx-Lebanon Hospital for medical treatment.

121.     On information and belief, it is common practice among NYPD officers to stop people with no actual belief a crime is being committed.

122.     On information and belief, this practice flows from the exceedingly broad ambit and mandatory nature of Defendant CITY OF NEW YORK's "stop and frisk" program.

123.     Information supporting the existence of the above-referenced abuses of "stop and frisk" are pled in detail below, in the appendix hereto titled .

124.     Upon release from the fourty-fourth (44th) Precinct Plaintiff GEORGE LYNCH went home and then immediately to Bronx-Lebanon Hospital for treatment.

125.     Plaintiff GEORGE LYNCH was treated at Bronx-Lebanon Hospital for approximately 5 hours.

126.     Plaintiff GEORGE LYNCH was prescribed pain-killers and anti-inflammatory medicines as a result of the pain and swelling he suffered from his injuries sustained in the brutal beating administered by Defendants "John Doe" POLICE OFFICERS.

127.     Plaintiff GEORGE LYNCH was in the custody of the New York City Police Department for approximately nine (9) hours following his arrest at approximately 11:00pm on July 16, 2011 Bronx, New York arrest.

128.     No criminal charge was ever filed against Plaintiff GEORGE LYNCH stemming from any act on July 16, 2011, despite his arrest and beating by Defendant "John Doe" POLICE OFFICERS.

129.     At the time of the July 16, 2011 Bronx, New York incident and brutal beating administered by Defendants "John Doe" POLICE OFFICERS, Plaintiff GEORGE LYNCH did not have any warrants outstanding for his arrest.

130.     At the time of the July 16, 2011 Bronx, New York incident and brutal beating administered by Defendants "John Doe" POLICE OFFICERS, Plaintiff GEORGE LYNCH was not carrying a weapon of any sort.

131.    At the time of the July 16, 2011 Bronx, New York incident and brutal
beating administered by Defendants "John Doe" POLICE OFFICERS, Plaintiff
GEORGE LYNCH was not carrying any illegal substances.

132.    At the time of the July 16, 2011 Bronx, New York incident and brutal
beating administered by Defendants "John Doe" POLICE OFFICERS, Plaintiff
GEORGE LYNCH was not engaged in any illegal activity of any kind.

133.    The July 16, 2011 incident described herein constituted Plaintiff GEORGE
LYNCH'S only interaction with the criminal justice system to date.

134.    The particular stop of Plaintiff GEORGE LYNCH is believed to have been
motivated in whole or in part by the aforesaid unconstitutional custom and/or
policy of unlawful stops used as a fishing expedition by the New York City Police
Department.

135.    The particular arrest of Plaintiff GEORGE LYNCH is believed to have
been motivated in whole or in part by the aforesaid custom or practice of
stopping individuals on the street without reasonable suspicion.

136.    While the particular arrest of Plaintiff GEORGE LYNCH did not result in
charges being filed, his groundless stop and the subsequent illegal use of force
against Plaintiff is believed to have been motivated in whole or in part by the
aforesaid custom and practice of being able to stop and charge individuals with
crimes and violations for personal vindication and/or as pretexts to justify use of
force, and/or to justify punitive false arrests because Plaintiff GEORGE LYNCH'S
arrests were undertaken in the absence of probable cause to arrest.

137.    The fact that Plaintiff GEORGE LYNCH was not eventually charged does
not factor into the motivations or assumptions made by Defendant "John Doe"
POLICE OFFICERS when making the determination to transport him to the
police station. The policy and practice of condoning "contempt of cop" and "cover
charges" creates an environment where police know they can stop and treat
anyone however they want.

138.    The particular arrest of Plaintiff GEORGE LYNCH is believed to have
been motivated in whole or in part by the aforesaid custom or practice of
charging individuals with crimes and violations such as resisting arrest, disorderly
conduct, and obstruction of governmental administration for personal vindication
and/or as pretexts to justify use of force, and/or to justify punitive false arrests
because they were undertaken in a manner which indicated that the individual
Defendant Police Officers who participated in Plaintiff GEORGE LYNCH's arrest
made the determination to arrest Plaintiff GEORGE LYNCH before determining
why Plaintiff GEORGE LYNCH should be arrested.

139.    The particular arrest of Plaintiff GEORGE LYNCH is believed to have
been motivated in whole or in part by the aforesaid custom or practice of
charging individuals with crimes and violations such as resisting arrest, disorderly

conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests, because the Defendant Police Officers arrested Plaintiff GEORGE LYNCH after it was already established that Plaintiff GEORGE LYNCH was not carrying any weapons or illegal substances, and did not have any outstanding warrants against him, but after Plaintiff GEORGE LYNCH had been seized and brutally beaten by the Defendant Police Officers.

140.    The actions of the Defendant "John Doe' POLICE OFFICER referred to above in pantomiming the planting of fingerprints on a gun illustrate that the Defendant "John Doe" POLICE OFFICERS believe that practices such as pre-textual and punitive arrests are within the custom of the New York City Police Department.

141.    The particular arrest of Plaintiff GEORGE LYNCH is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because they were undertaken in the absence of probable cause to arrest.

142.    The particular arrest of Plaintiff GEORGE LYNCH is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because it was undertaken in a manner which indicated that the individual Defendant Officers who participated in Plaintiff GEORGE LYNCH's arrest made the determination to arrest Plaintiff GEORGE LYNCH before determining why Plaintiff GEORGE LYNCH should be arrested.

143.    The particular arrest of Plaintiff GEORGE LYNCH is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because Plaintiff GEORGE LYNCH was arrested after it was already established that he was not carrying any weapons or illegal substances, did not have any outstanding warrants against him, and was not engaged in illegal conduct of any kind just before the time of his arrest.

144.    As a result of the forgoing, Plaintiff GEORGE LYNCH sustained, *inter alia*, mental injuries, emotional distress, embarrassment, loss of property, physical injuries, damage of property, humiliation, and deprivation of his constitutional rights.

145.    Plaintiff GEORGE LYNCH has cooperated with an Internal Affairs Group 54 (use of force investigators) investigation into the July 16, 2011 incident.

146.    Plaintiff GEORGE LYNCH complied with all relevant provisions of GML §50 in providing notice to Defendant CITY OF NEW YORK of his claim.

### FIRST CLAIM FOR RELIEF
### DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

147.    Plaintiff GEORGE LYNCH repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

148.    All of the aforementioned acts of the Defendant CITY and Defendant "John Doe" POLICE OFFICERS, their agents, servants and employees, were carried out under the color of state law.

149.    All of the aforementioned acts deprived Plaintiff GEORGE LYNCH of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

150.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

151.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

152.    The Defendant "John Doe" POLICE OFFICERS and Defendant CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

153.    Further information regarding the existence of the aforesaid constitutionally-violative customs, policies and practices of Defendant CITY OF NEW YORK and its police officers, as well as of Defendant CITY OF NEW YORK's knowledge of same and Defendant CITY OF NEW YORK's failures to address same are set forth in the appendix to this complaint.

154.    As a result of the above constitutionally impermissible conduct, Plaintiff GEORGE LYNCH was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, legal expenses and damage to his reputation and standing within his community.

155.     As a result of Defendants' impermissible conduct, Plaintiff GEORGE LYNCH demands judgment against Defendants in a sum of money to be determined at trial.


## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983

156.     Plaintiff GEORGE LYNCH repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

157.     As a result of the aforesaid conduct by Defendants, Plaintiff GEORGE LYNCH was subjected to an illegal, improper and false arrest by the Defendants "John Doe" Police Officers and taken into custody and caused to be falsely imprisoned, detained and confined without any probable cause, privilege or consent.

158.     As a result of the above constitutionally impermissible conduct, Plaintiff GEORGE LYNCH was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, legal expenses and damage to his reputation and standing within his community.

159.     As a result of Defendants' impermissible conduct, Plaintiff GEORGE LYNCH demands judgment against Defendants in a sum of money to be determined at trial.


## THIRD CLAIM FOR RELIEF
## FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

160.     Plaintiff GEORGE LYNCH repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

161.     The Defendant "John Doe" POLICE OFFICERS and Defendant CITY OF NEW YORK had an affirmative duty to intervene on Plaintiff GEORGE LYNCH'S behalf to prevent the above-referred violations of their constitutional rights.

162.     The individual Defendant "John Doe" POLICE OFFICERS failed to intervene on Plaintiff GEORGE LYNCH'S behalf to prevent the violation of his constitutional rights despite having had realistic opportunities to do so.

163.     The individual Defendant "John Doe" POLICE OFFICERS failed to intervene on Plaintiff GEORGE LYNCH's behalf to prevent the violation of his

constitutional rights despite having substantially contributed to the circumstances within which Plaintiff GEORGE LYNCH's rights were violated by their affirmative conduct.

164.     As a result of the aforementioned conduct of the individual defendants, Plaintiff GEORGE LYNCH'S constitutional rights were violated.

165.     As a result of the above constitutionally impermissible conduct, Plaintiff GEORGE LYNCH was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, legal expenses and damage to his reputation and standing within his community.

166.     As a result of Defendants' impermissible conduct, Plaintiff GEORGE LYNCH demands judgment against Defendants in a sum of money to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**EXCESSIVE FORCE UNDER 42 U.S.C. § 1983**

167.     Plaintiff GEORGE LYNCH repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

168.     Defendant "John Doe" POLICE OFFICERS administered a brutal beating upon Plaintiff GEORGE LYNCH in the absence of need for such action and force.

169.     Defendant "John Doe" POLICE OFFICERS hit, beat, kicked and subjected Plaintiff GEORGE LYNCH to several physically aggressive maneuvers without Defendants identifying a requisite need for such action and force.

170.     On orders of one or more senior Defendant "John Doe" POLICE OFFICERS, police kept Plaintiff GEORGE LYNCH in custody overnight before releasing him with no charges and a veiled threat to not report their crimes.

171.     On orders of one or more senior Defendant "John Doe" POLICE OFFICERS, police officers kept Plaintiff GEORGE LYNCH at the fourty-fourth (44th) Precinct intimidating him into refusing medical treatment.

172.     The level of force employed by Defendant "John Doe" Police Officers against Plaintiff GEORGE LYNCH was objectively unreasonable.

173.     The force employed by Defendant "John Doe" Police Officers against Plaintiff GEORGE LYNCH did not advance any proper government objective.

174.     As a result of the aforementioned conduct of defendants, Plaintiff GEORGE LYNCH was subjected to excessive force and sustained physical injuries.

175.     As a result of the aforementioned conduct of Defendant "John Doe" POLICE OFFICERS, Plaintiff GEORGE LYNCH suffered and sustained injuries to his clavicle bone.

176.     As a result of the aforementioned conduct of Defendant "John Doe" POLICE OFFICERS, Plaintiff GEORGE LYNCH suffered and sustained injuries to his face, in particular his nose.

177.     As a result of the aforementioned conduct of Defendant "John Doe" POLICE OFFICERS, Plaintiff GEORGE LYNCH was unable to play basketball for the preponderance of his senior summer, depriving him of significant chances for an athletic scholarship.

178.     Plaintiff GEORGE LYNCH had no prior arrests or interaction with law enforcement in his entire life nor was their probable cause to make an arrest, making Defendant New York Police Department's act of beating Plaintiff GEORGE LYNCH a use of excessive force.

179.     As a result of the above constitutionally impermissible conduct, Plaintiff GEORGE LYNCH was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, legal expenses and damage to his reputation and standing within his community.

180.     As a result of Defendants' impermissible conduct, Plaintiff GEORGE LYNCH demands judgment against Defendants in a sum of money to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY UNDER *MONELL*

181.     Plaintiff GEORGE LYNCH repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

182.     Plaintiff also incorporates herein by reference the contents of the appendix attached hereto, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

183.     Defendants used excessive force on Plaintiff GEORGE LYNCH in the absence of any evidence of criminal wrongdoing or other justification for the use of such force, notwithstanding their knowledge that said uses of force were

unreasonable, unjustified, and would jeopardize Plaintiff GEORGE LYNCH's liberty, well-being, safety and constitutional rights.

184.    Defendants arrested and incarcerated Plaintiff GEORGE LYNCH in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiff GEORGE LYNCH'S liberty, well-being, safety and constitutional rights.

185.    The acts complained of were carried out by the aforementioned individual Defendant "John Doe" POLICE OFFICERS in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

186.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

187.    The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

   a. the continuing practice or custom of New York City Police Officers utilizing disproportionate force in a punitive, retaliatory or otherwise wrongful manner in interactions with civilians generally;
   b. the continuing practice or custom of New York City Police Officers utilizing disproportionate force in a punitive, retaliatory or otherwise wrongful manner in interactions with minorities;
   c. the continuing practice or custom of New York City Police Officers wrongfully arresting individuals without conducting investigations sufficient to ascertain whether there is probable cause to arrest said persons;
   d. the continuing practice or custom of New York City Police Officers wrongfully arresting minority individuals without conducting investigations sufficient to ascertain whether there is probable cause to arrest said persons;
   e. the continuing practice or custom of New York City Police Officers wrongfully stopping people without any reasonable cause often leading to unprovoked police violence;
   f. the continuing practice of failing to properly screen, supervise, discipline, transfer, counsel, or otherwise control police officers engaged in the excessive use of force or in warrantless or otherwise unconstitutional arrests or otherwise impermissible violations of individuals' constitutional rights, particularly with respect to officers who are repeatedly accused of such acts;

g. the custom or practice of members of the New York City Police Department known as the "Blue Wall of Silence," wherein members of the New York City Police Department intentionally and willfully fail to cooperate with investigations into the misconduct or corrupt activities of their fellow officers, a practice which leads New York City Police Officers to regularly condone and cover up police abuse of power by telling false and incomplete stories.

188.    The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department evince deliberate indifference to the safety, well-being, and constitutional rights of Plaintiff GEORGE LYNCH.

189.    As a result of the above constitutionally impermissible conduct, Plaintiff GEORGE LYNCH was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, legal expenses and damage to his reputation and standing within his community.

190.    As a result of Defendants' impermissible conduct, Plaintiff GEORGE LYNCH demands judgment against Defendants in a sum of money to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## EQUAL PROTECTION UNDER 42 U.S.C. § 1983

191.    Plaintiff GEORGE LYNCH repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

192.    Plaintiff also incorporates herein by reference the contents of the appendix attached hereto, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

193.    At all times described herein, Plaintiff GEORGE LYNCH was possessed of the right to equal protection under the laws, as guaranteed under the 14th Amendment to the United States Constitution.

194.    Defendant "John Doe" POLICE OFFICERS arrested and incarcerated Plaintiff GEORGE LYNCH in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiff's liberty, well-being, safety and constitutional rights.

195.    The acts complained of were carried out by the aforementioned individual Defendant "John Doe" POLICE OFFICERS in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

196.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

197.     Plaintiff GEORGE LYNCH was taken into Police custody and detained against his will overnight.

198.     Plaintiff GEORGE LYNCH was taken into Police custody and detained against his will overnight, while being willfully denied medical treatment for serious injuries.

199.     Plaintiff GEORGE LYNCH was taken into Police custody and detained against his will overnight, while being denied medical treatment for serious injuries.

200.     Plaintiff GEORGE LYNCH was taken into Police custody and detained against his will overnight, while being denied medical treatment for serious injuries, and then was released without criminal charges.

201.     That upon release, it was suggested to Plaintiff GEORGE LYNCH that he should not report the wrongdoing of the Defendant Police Officers.

202.     That the actions of Defendant "John Doe" POLICE OFFICERS heretofore described, constituted unlawful detention, imprisonment, assault and battery and malicious prosecution and were designed to and did cause specific bodily harm, pain and suffering both in violation of Plaintiff GEORGE LYNCH'S Constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for Plaintiff GEORGE LYNCH'S exercise of his civil and constitutional rights of free, free expressive association as guaranteed by the Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

203.     The particular arrest of Plaintiff GEORGE LYNCH is believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, whereby minority individuals are charged with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration, in the absence of probable cause to arrest, due to a perceived ease of prosecution of such minority individuals.

204.     The particular arrest of Plaintiff GEORGE LYNCH is believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, whereby minority individuals are charged with crimes

and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration, in the absence of probable cause to arrest, due to a perceived ease of prosecution of such minority individuals, because the Defendant "John Does" POLICE OFFICERS informed Plaintiff GEORGE LYNCH that he was being arrested after it was already established that Plaintiff GEORGE LYNCH was not carrying any weapons or illegal substances, and did not have any outstanding warrants against him.

205.     The Defendant "John Doe" POLICE OFFICERS, through their actions, carried out a discriminatory application of such laws, driven by a discriminatory motivation of what might otherwise be facially neutral statutes due to a perceived ease of prosecution.

206.     As a result of the aforementioned conduct, the Defendants "John Doe" POLICE OFFICERS have violated Plaintiff GEORGE LYNCH'S constitutional rights to equal protection, and Plaintiff GEORGE LYNCH is entitled to seek redress under 42 U.S.C. §1983, and is further entitled to injunctive relief to the extent necessary to prevent further disparate treatment and retaliation.

207.     The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by Plaintiff GEORGE LYNCH as alleged herein.

208.     The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by Plaintiff GEORGE LYNCH as alleged herein.

209.     As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, Plaintiff GEORGE LYNCH was subjected to excessive force, false arrest, and excessive and unnecessary detention.

210.     As a result of the foregoing, Plaintiff GEORGE LYNCH was caused to suffer personal injuries, violations of his civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses, and damage to his reputation and standing within his community.

211.     As a result of the foregoing, Plaintiff GEORGE LYNCH demands judgment against Defendants in a sum of money to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
## STATE LAW BATTERY

212.     Plaintiff GEORGE LYNCH repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

213.     Plaintiff GEORGE LYNCH repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

214.     The Defendant "John Doe" POLICE OFFICERS who pursued and apprehended Plaintiff GEORGE LYNCH committed battery upon Plaintiff GEORGE LYNCH in the course of his apprehension by tackling, punching, kicking and striking Plaintiff GEORGE LYNCH.

215.     The Defendant "John Doe" POLICE OFFICERS who pursued and apprehended Plaintiff GEORGE LYNCH intentionally touched Plaintiff GEORGE LYNCH with an intent to cause harm to plaintiff GEORGE LYNCH.

216.     The circumstances presented to Defendants at that time did not support the above applications of force on Plaintiff GEORGE LYNCH.

217.     Plaintiff GEORGE LYNCH was injured by Defendants' non-consensual and unprivileged physical contact.

218.     As a result of the foregoing, Plaintiff GEORGE LYNCH is entitled to compensatory damages and punitive damages against the Defendants in amounts to be determined at trial.

## EIGHTH CLAIM FOR RELIEF
## STATE LAW ASSAULT

219.     Plaintiff GEORGE LYNCH repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

220.     The individual defendants' conduct threatened imminent, offensive, and harmful contact with Plaintiff GEORGE LYNCH.

221.     The individual defendants' aforementioned conduct placed Plaintiff GEORGE LYNCH in apprehension of imminent harmful and offensive bodily contact.

222.     The individual defendants engaged in the aforementioned conduct intentionally.

223.     A reasonable person in the position of the individual defendants under like circumstances would have known or been substantially certain that the

aforementioned conduct would place Plaintiff GEORGE LYNCH in apprehension of imminent harmful and offensive bodily contact.

224.    As a result of the individual defendants' conduct, Plaintiff GEORGE LYNCH suffered physical injury.

225.    As a result of the individual defendants' conduct, Plaintiff GEORGE LYNCH has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

226.    As a result of the individual defendants' conduct, Plaintiff GEORGE LYNCH has suffered other injuries, damages, and losses.

227.    As a result of the foregoing, Plaintiff GEORGE LYNCH is entitled to compensatory damages and punitive damages against the Defendants in amounts to be determined at trial.

## NINTH CLAIM FOR RELIEF
## STATE LAW NEGLIGENCE

228.    Plaintiff GEORGE LYNCH repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

229.    Several Defendant "John Doe" POLICE OFFICERS employed physical force in dealing with Plaintiff GEORGE LYNCH.

230.    In employing the aforementioned physical force, the Defendant "John Doe" POLICE OFFICERS did not exercise that degree of care which would reasonably be required of a police officer under similar circumstances.

231.    As a result of the failure of these Defendant "John Doe" POLICE OFFICERS to exercise due care, Plaintiff GEORGE LYNCH suffered physical injuries.

232.    As a result of the failure of these Defendant "John Doe" POLICE OFFICERS to exercise due care, Plaintiff GEORGE LYNCH has suffered injuries, including physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

233.    As a result of the failure of these Defendant "John Doe" POLICE OFFICERS to exercise due care, Plaintiff GEORGE LYNCH has suffered other injuries, damages, and losses.

234.    The failure of these Defendant "John Doe" POLICE OFFICERS to exercise due care is the proximate cause of Plaintiff GEORGE LYNCH's injuries.

235.     As a result of the foregoing, Plaintiff GEORGE LYNCH is entitled to compensatory damages and punitive damages against the Defendants in amounts to be determined at trial.

## TENTH CLAIM FOR RELIEF
## STATE LAW NEGLIGENT HIRING AND RETENTION AGAINST
## DEFENDANT CITY OF NEW YORK

236.     Plaintiff GEORGE LYNCH repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

237.     Upon information and belief, Defendant THE CITY OF NEW YORK failed to use reasonable care in the hiring and retention of the Defendant Police Officers who conducted and participated in the arrest and unlawful assaults and acts of battery against Plaintiff GEORGE LYNCH.

238.     Defendant City of New York knew, or should have known in the exercise of reasonable care, the propensities of the aforesaid Defendant Police Officers to engage in the wrongful conduct heretofore alleged in this Complaint.

239.     As a result of the foregoing conduct, Plaintiff GEORGE LYNCH was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, and other irreparable damage to his life.

240.     As a result of Defendants' impermissible conduct, Plaintiff GEORGE LYNCH demands judgment against Defendants in a sum of money to be determined at trial.

## ELEVENTH CLAIM FOR RELIEF
## STATE LAW NEGLIGENT TRAINING AND SUPERVISION AGAINST
## DEFENDANT CITY OF NEW YORK

241.     Plaintiff GEORGE LYNCH repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

242.     Upon information and belief the Defendant THE CITY OF NEW YORK failed to use reasonable care in the training and supervision of the aforesaid DEFENDANT POLICE OFFICERS who conducted and participated in the arrest and unlawful searches, assaults, and acts of battery against Plaintiff GEORGE LYNCH.

243.     As a result of the foregoing conduct, Plaintiff GEORGE LYNCH was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, and other irreparable damage to his life.

244.     As a result of Defendants' impermissible conduct, Plaintiff GEORGE LYNCH demands judgment against Defendants in a sum of money to be determined at trial.

### ELEVENTH CLAIM FOR RELIEF
### STATE LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### AGAINST DEFENDANT CITY OF NEW YORK
### AND ONE OR MORE DEFENDANT JOHN DOE POLICE OFFICERS

245.     Defendant THE CITY OF NEW YORK, through its agents, the Defendant "John Doe POLICE OFFICERS who assaulted and battered Plaintiff GEORGE LYNCH, the Defendant "John Doe" POLICE OFFICER who told Plaintiff GEORGE LYNCH that he would be sent to prison and digitally (i.e., with fingers) raped therein, and the Defendant "John Doe" POLICE OFFICER who pantomimed "planting" Plaintiff GEORGE LYNCH's fingerprints on a gun, employed extreme and outrageous conduct against Plaintiff GEORGE LYNCH.

246.     Defendant THE CITY OF NEW YORK, and its agents, the Defendant "John Doe POLICE OFFICERS who assaulted and battered Plaintiff GEORGE LYNCH, the Defendant "John Doe" POLICE OFFICER who told Plaintiff GEORGE LYNCH that he would be sent to prison and digitally (i.e., with fingers) raped therein, and the Defendant "John Doe" POLICE OFFICER who pantomimed "planting" Plaintiff GEORGE LYNCH's fingerprints on a gun, had intent to cause, or disregarded of a substantial probability of causing, severe emotional distress to Plaintiff GEORGE LYNCH.

247.     As a result of the outrageous conduct of Defendant THE CITY OF NEW YORK, and its agents, the Defendant "John Doe POLICE OFFICERS who assaulted and battered Plaintiff GEORGE LYNCH, the Defendant "John Doe" POLICE OFFICER who told Plaintiff GEORGE LYNCH that he would be sent to prison and digitally (i.e., with fingers) raped therein, and the Defendant "John Doe" POLICE OFFICER who pantomimed "planting" Plaintiff GEORGE LYNCH's fingerprints on a gun, Plaintiff GEORGE LYNCH suffered emotional and mental distress and injury.

248.     As a result of Defendants' impermissible conduct, Plaintiff GEORGE LYNCH demands judgment against Defendants in a sum of money to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

I. Invoke pendent party and pendent claim jurisdiction.

II. Award appropriate compensatory and punitive damages.

III. Award appropriate declaratory and injunctive relief.

IV. Empanel a jury.

V. Award attorney's fees and costs.

VI. Award such other and further relief as the Court deems to be in the interest of justice.

DATED:    New York, New York
          June 6, 2012

Respectfully submitted,

SAMUEL B. COHEN [SC 0622]
STECKLOW COHEN & THOMPSON
10 SPRING ST, SUITE 1
NEW YORK, NY 10012
[212] 566-8000
[212] 202-4952/FAX
ATTORNEYS FOR PLAINTIFF